Dexter Massey appeals from a judgment of the Jefferson County Circuit Court denying him relief on his claim for ejectment against W.F. Jackson and stating that Jackson was entitled to possession of the parcel of property disputed by the parties. We affirm.
The record reveals the following facts. In February 1992, Massey secured a judgment for $3,000 in his favor against Jackson in an unrelated civil action. Massey thereafter executed upon this judgment, and the sheriff of Jefferson County levied on a parcel[1] of commercial real property belonging to W.F. Jackson; this parcel was later sold at a judicial sale for $136 to Massey. The sheriff of Jefferson County then executed a sheriff's deed conveying legal title to the parcel to Massey. Massey then sued Jackson in ejectment for possession of the parcel.
After this complaint was filed, the parties' attorneys entered into an agreement concerning the parcel in question, pursuant to which Massey would sell the parcel back to Jackson for $2,500, payable in five monthly installments. A letter from Massey's counsel to Jackson's counsel memorialized this agreement as follows:
 "At the present time, there is a balance due of about [$3,500]. [Massey] is agreeable to accepting the sum of [$500.00] per month beginning December 1, 1992, and every month thereafter until the sum of [$2,600] is paid. In the event [Jackson] fails to make payments on time, then [Jackson] would be obligated to pay the full amount. It is only upon completion of payment of the entire amount of money on time that] will satisfy the judgment in full and dismiss the pending unlawful detainer [sic].
 ". . . Please have Mr. Jackson make the certified funds or cash to me and mail them to my office . . or he can bring the cash money by ;on the day in question. Please be sure he understands that he has to make the payments on time without fail for five months."
This agreement was filed in the trial court on December 18, 1992, and the case was placed on the trial court's administrative docket.
Pursuant to this agreement, Jackson began making payments of $500 to Jackson's attorney. After remitting his December 1, 1992, payment, Jackson attempted to pay his January payment on New Year's Day, the first day of the succeeding month, which was a Friday. Although Jackson testified that he went to the office of Massey's counsel on two occasions on January 1, 1993, that office was closed, and Jackson waited until the following Monday, January 4, to make his $500 payment. Jackson also testified that he made three further payments of $500 on February 1, March 1, and March 31, respectively. The office of Massey's counsel accepted all five payments from Jackson, and it issued him a receipt on each occasion.
After making the five payments called for under the parties' agreement, Jackson requested that Massey convey title to the parcel of real property. Massey refused, claiming that the January 4, 1993, payment was untimely and that the parties' agreement had been breached. Massey asserted that Jackson owed him $963 (i.e., the difference between $3,463, which apparently represents the amount of the original judgment executed upon by Massey, and $2,500, the total of Jackson's payments).
Jackson then sued Massey's attorney in the Jefferson County District Court, asserting claims of breach of contract and fraud. After a trial in April 1994, Jackson secured a judgment against Massey's attorney for $1,043, which was ultimately satisfied by payment. No appeal was taken from that judgment.
Almost two years later, in March 1996, Massey filed a motion for summary judgment on his ejectment claim, attaching the sheriff's deed and his affidavit stating that Jackson had not surrendered the parcel. Jackson filed a response in opposition, supported by his affidavit, in which he contended that he *Page 658 
had met all obligations under the parties' 1992 agreement. Jackson also asserted a counterclaim in quasi-contract for $1,200 that he had allegedly paid to Massey's counsel in 1991, before the effective date of the original 1992 judgment in favor of Massey upon which he had executed. The trial court denied Massey's motion for summary judgment, and set the case for trial, at which time the trial court heard ore tenus evidence from the parties.
The trial court subsequently entered a judgment in favor of Jackson on Massey's ejectment claim. Also, the trial court stated that Jackson was entitled to possession of the parcel at issue, restating its legal description. The trial court entered judgment in favor of Massey on Jackson's counterclaim.
Massey appealed the judgment to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to §12-2-7 (6), Ala. Code 1975. Jackson has not cross-appealed.
Because the trial judge heard the evidence without a jury, our standard of review accords a presumption of correctness to both the trial court's factual findings and its judgment based upon those findings:
 "We note that under the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. Federal Home Loan Mortgage Corp. v. Bates, 644 So.2d 925 (Ala. 1994). The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence. Ex parte Kent Corp., 641 So.2d 212 (Ala. 1994). The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony. Charles Israel Chevrolet, Inc. v. Walter E. Heller Co., 476 So.2d 71 (Ala. 1985)."
Ex parte Pielach, 681 So.2d 154, 154-56 (Ala. 1996).
Moreover, we note that the trial court's judgment contains no specific findings of fact. Under these circumstances, our review is governed by the following additional principles:
 "Because the trial judge made no specific findings of fact, this Court will assume that the trial judge made those findings necessary to support the judgment. Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless found to be plainly and palpably wrong. The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment."
Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A.,608 So.2d 375, 378 (Ala. 1992) (citations and internal quotation marks omitted).
On appeal, Massey principally contends that he proved the elements of an ejectment claim under Alabama law, that a claim for ejectment is "a complaint at law without any equitable consideration," and that the trial court erred and abused its discretion in denying him relief. In response, Jackson asserts that the merger of law and equity in Alabama authorized the trial court to look to the parties' agreement in entering the judgment in his favor, and that the trial court's judgment was proper.
At common law, a claim for ejectment (or a claim pursuant to Ala. Code 1975, § 6-6-280 et seq., in the nature of ejectment) was a purely legal claim. Taylor v. Gray, 265 Ala. 279,281, 90 So.2d 778, 780 (1956). Thus, a defendant in an ejectment action at law could not assert equitable defenses, such as his or her equitable title to the land at issue. E.g., Cox v.Cox., 209 Ala. 75, 76, 95 So. 275, 275-76 (1923). However, even under Alabama practice preceding the adoption of the Alabama Rules of Civil Procedure, a defendant upon motion could have an ejectment action transferred from the "law side" to the "equity side" of the trial court (e.g., Jones v. Wright,) *Page 659 222 Ala. 530, 531, 133 So. 275, 276 (1931)), whereupon equitable rights would be determined. See Holder v. Taylor, 233 Ala. 477,479, 172 So. 761, 762 (1937).
Of course, the adoption of the Alabama Rules of Civil Procedure abolished such technicalities as forms of action and procedural distinctions between law and equity. Under the Rules, "[t]here shall be one form of action to be known as `civil action.'" Rule 2, Ala. R. Civ. P. As this court stated soon after the adoption of Rule 2, "[a]ctions and defenses of a legal and equitable nature may now be joined and intermingled in the one form of 'Civil Action."' Poston v. Gaddis, 335 So.2d 165, 167
(Ala.Civ.App.), cert. denied, 335 So.2d 169 (Ala. 1976); see also Rule 8 (e)(2), Ala. R. Civ. P. Thus, we must conclude that the Rules of Civil Procedure, having merged law and equity practice in this state, have empowered trial courts to consider not only legal defenses to ejectment claims, but equitable defenses as well. See
25 Am. Jur.2d Ejectment § 24 (1996) ("In many states . . . either because of the abolition of the distinction between courts of law and equity or by virtue of express statutory provisions, equitable defenses are available in ejectment"); 28A C.J.S.Ejectment § 40 (1996) ("In some jurisdictions . . . either by virtue of express statute or- by a union of common-law and equity jurisdiction in the same court, an action of ejectment may be defeated on equitable grounds").
At trial, Jackson's evidence consisted primarily of proof that he had tendered, and Massey's counsel had accepted, each of the five payments of $500 called for under the parties' contract, including not only the payment he made on January 4, 1993, three days after the first day of January (i.e., the first "month thereafter" as described in the contract), but also three subsequent monthly payments. Jackson also testified that in the following August or September, he contacted Massey's counsel in an effort to have Massey's counsel contact Massey and tell him to relinquish his claim on the parcel, but that Massey's counsel later told Jackson that Jackson had breached the parties' contract by failing to make his January payment on time.
Whether a party has waived strict compliance with the terms of a contract is a question of fact. Killen v. Akin, 519 So.2d 926,929 (Ala. 1988). In this case, the parties' contract did not contain any terms that would prevent the application of the doctrine of waiver to the acceptance of late payments, and there is no evidence in the record tending to indicate that there was anything to prevent Massey from rejecting Jackson's payments that did not strictly comply with the parties' agreement. Under these circumstances, a factual question was presented concerning whether Massey's conduct in accepting one payment three days after the first day of the month and in accepting three subsequent payments without protest constituted a waiver of strict compliance with the time-for-payment term of the parties' contract. See Nelson v. Vick, 462 So.2d 935, 938 (Ala.Civ.App. 1984) (repeated acceptance of late payments by creditors held to create question of fact concerning whether they had waived strict compliance with time-for-payment term of a contract lacking a nonwaiver agreement). The trial court could properly have found that Jackson fully complied with the parties' contract, giving him equitable title to the parcel, and that Jackson became entitled to possession of the parcel not withstanding Massey's subsequent refusal to reconvey legal title to Jackson. See, e.g.,Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 180,139 So. 342, 347 (1932) (execution of land sale contract vests purchaser with equitable title, and thereafter seller holds legal title in trust for the buyer); St. Clair Springs Hotel Co. v. Balcomb,215 Ala. 12, 16, 108 So. 858, 861 (1926) (grantee's payment of purchase price for land vested grantee with a "perfect equity"). We therefore conclude that the trial court's judgment in favor of Jackson on Massey's ejectment claim was not plainly or palpably wrong. Transamerica, 608 So.2d at 378.
Massey also contends that the trial court abused its discretion in declaring that Jackson is entitled to possession of the parcel in dispute because, he says, there was no evidence to support such relief and Jackson never requested this relief. However, under Alabama law, "[c]ourts of record . . . have *Page 660 
power to declare rights, status, and other legal relations whether or not further relief is or could be claimed," Ala. Code 1975, § 6-6-222, and "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Rule 54 (c), Ala. R. Civ. P. Because the evidence in this case supports the trial court's judgment in favor of Jackson on Massey's ejectment claim based upon Jackson's fulfillment of the parties' contract, we conclude that the trial court likewise properly declared Jackson to be entitled to possession of the parcel in question.
Based upon the facts of this case and the authorities cited above, we affirm the judgment of the trial court.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] Lot 15 except the East 65 feet of G.W. Brown Survey, as recorded in Map Book 3, page 100 in the Office or the Judge of Probate of Jefferson County.